UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JOHN STOLTZFUS, | ) | |
| JOHN RIEHL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-00359-JMS-MJD |
| | ) | |
| CORY HUTCHINS, | ) | |
| SAMUEL A. SWAIM Honorable, | ) | |
| STACY JEFFRIES, | ) | |
| PARKE COUNTY CIRCUIT COURT, | ) | |
| STEVEN ANDREW CVENGROS, | ) | |
| KEVIN R. STALKER, | ) | |
| STATE OF INDIANA, | ) | |
| COUNTY OF PARKE STATE OF INDIANA, | ) | |
| PARKE COUNTY, | ) | |
| PARKE COUNTY BOARD OF | ) | |
| COMMISSIONERS, | ) | |
| JASON FRAZIER #61-02, | ) | |
| ED ROACH, | ) | |
| NATALIE MCCALL #61-61, | ) | |
| RUSSELL WHITE #61-59, | ) | |
| BENJAMIN WOOD #61-53, | ) | |
| JUSTIN COLE, | ) | |
| SHAWN CLOVER #61-11, | ) | |
| RANDALL KNEELAND, | ) | |
| GEOFFREY CANFIELD #61-10, | ) | |
| RODNEY SMITH #R-3, | ) | |
| CHRISTOPHER E. FISHER #R-4, | ) | |
| STACY FELDHAKE #61-44, | ) | |
| BILL COOK #61-43, | ) | |
| DARLA WIRTH 61-40, | ) | |
| CINDY ROHR #61-42, | ) | |
| ZACHARY LANCASTER, | ) | |
| DAVID LEE, | ) | |
| DOES 1-25, | ) | |
| | ) | |
| Defendants. | ) | |
| BARBER CONSTRUCTION CO., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>ORDER</u>**

This case arises out of two traffic stops, one involving Plaintiff John Stoltzfus on March 30, 2017, and another involving Mr. Stoltzfus and Plaintiff John Riehl on June 1, 2017. As a result of these traffic stops and the "episodes" that Plaintiffs allege occurred thereafter at the Parke County Jail and in Parke Circuit Court, Plaintiffs filed suit against twenty-seven named individuals and entities and twenty-five individuals identified as "Does." Defendants have filed four Motions to Dismiss, [Filing No. 19; Filing No. 29; Filing No. 32; Filing No. 43], each of which is now ripe for the Court's review.

## I.
### LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. Pro. 8(a)(2)). "Specific facts are not necessary, the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

A motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above

the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Complaints filed by *pro se* litigants "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94; *see also Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017).

## II.
### BACKGROUND

The following allegations are taken from Plaintiffs' Complaint, [Filing No. 1], and are accepted as true for purposes of deciding the pending Motions, consistent with the applicable standard of review.

### A. The March 30, 2017 Incident and Related Events

On March 30, 2017, Deputy Sheriff Cory Hutchins pulled over Mr. Stoltzfus and demanded Mr. Stoltzfus' license, insurance, and registration. [Filing No. 1 at 10.] Mr. Stoltzfus asked Deputy Hutchins why he pulled him over and Deputy Hutchins did not answer. [Filing No. 1 at 10-11.] Mr. Stoltzfus then provided Deputy Hutchins with insurance documents, registration, and an "International Driving Permit." [Filing No. 1 at 11.] Deputy Hutchins ordered Mr. Stoltzfus to step out of the vehicle. [Filing No. 1 at 11.] Deputy Hutchins asked Mr. Stoltzfus if Mr. Stoltzfus would show up in court if Deputy Hutchins issued him a summons. [Filing No. 1 at 11.] Deputy Hutchins then removed Mr. Stoltzfus from the vehicle, handcuffed him, and transported him to the Parke County Jail. [Filing No. 1 at 11.]

On the way to jail, Mr. Stoltzfus asked Deputy Hutchins why he was under arrest. [Filing No. 1 at 11.] Deputy Hutchins stated that, "You will find out on the paper. I am tired of you people thinking that you can drive without a driver's license." [Filing No. 1 at 11.]

At some point after Mr. Stoltzfus' arrest, his car was towed, and his father paid to retrieve it. [Filing No. 1 at 11.]

At the Parke County Jail, Mr. Stoltzfus refused to sign any documents presented to him, including his intake form. [Filing No. 1 at 12.] Staff at the jail wrote "refused" at the bottom of the form. [Filing No. 1 at 12.] Mr. Stoltzfus was initially denied access to a bible, although one was eventually provided to him. [Filing No. 1 at 12.] At some point during his incarceration, unnamed deputies strapped Mr. Stoltzfus to a wheelchair and wheeled him to court. [Filing No. 1 at 12.]

Thereafter, Mr. Stoltzfus appeared in the Parke Circuit Court for an arraignment before Judge Samuel Swaim. [Filing No. 1 at 12.] Mr. Stoltzfus walked up to, but refused to cross the "bar," at which point Judge Swaim ordered Mr. Stoltzfus to come aboard his ship by crossing the bar. [Filing No. 1 at 12.] Mr. Stoltzfus told Judge Swaim that he would prefer to address the issue from outside the vessel. [Filing No. 1 at 13.] Judge Swaim then ordered the bailiffs to hold Mr. Stoltzfus in contempt of court. [Filing No. 1 at 13.]

Mr. Stoltzfus was released from jail after serving a thirty-day sentence for being held in contempt of court. [Filing No. 1 at 13.] He was held without bail. [Filing No. 1 at 13.]

**B. The June 1, 2017 Incident and Related Events**

On June 1, 2017, Rockville Police Officer Christopher Fisher passed a vehicle being driven by Mr. Stoltzfus, in which John Riehl was a passenger. [Filing No. 1 at 13-14.] Officer Fisher turned his patrol car around and followed Mr. Stoltzfus' vehicle into a parking lot while flashing his emergency lights. [Filing No. 1 at 14.] Officer Fisher approached the vehicle and demanded that Mr. Stoltzfus roll down the window. [Filing No. 1 at 14.] Mr. Stoltzfus rolled down his window enough to hear Officer Fisher, but not all the way. [Filing No. 1 at 14.]

Officer Fisher demanded that Mr. Stoltzfus roll down his window all the way. [Filing No. 1 at 14.] Mr. Stoltzfus asked Officer Fisher what the probable cause for the stop was. [Filing No. 1 at 14.] Officer Fisher asked Mr Stoltzfus to step out of the vehicle. [Filing No. 1 at 14.] Officer Fisher called for backup and alleged that he had two sovereigns. [Filing No. 1 at 14.] Mr. Stoltzfus asked Officer Fisher if the officer had a warrant for Mr. Stoltzfus' arrest and Officer Fisher replied, "I don't even know you." [Filing No. 1 at 15.] Officer Fisher asked for Mr. Stoltzfus and Mr. Reihl's "information," and when he received it, he glanced at it and threw it on the hood of the vehicle. [Filing No. 1 at 15.]

At some point during the traffic stop, Parke County Sheriff's Deputies Shawn Clover and Geoffrey Canfield and Rockville Police Officer Rodney Smith arrived at the scene. [Filing No. 1 at 15.] One or more of the officers demanded that Mr. Stoltzfus step out of the vehicle and threatened to break the window. [Filing No. 1 at 15.] Deputy Clover repeated the order a few times and then smashed the vehicle's window with his baton, resulting in glass cuts and abrasions on Mr. Stoltzfus' face. [Filing No. 1 at 15.] Deputy Clover then unlocked and opened the door and pulled Mr. Stoltzfus out of the vehicle, twisted his arm and handcuffed him. [Filing No. 1 at 15.] One or more of the officers then told Mr. Riehl he would be next. [Filing No. 1 at 15.] Deputy Clover and Officer Smith then went to the passenger side of the vehicle, pulled Mr. Riehl out of the vehicle and placed him under arrest. [Filing No. 1 at 15.]

At the Parke County Jail, Mr. Stoltzfus was held on $5,000 bail and Mr. Riehl was held on $3,000 bail. [Filing No. 1 at 15.] The "court" refused to allow a bail bonds agent to pay ten percent of the bond. [Filing No. 1 at 15.] In jail, Mr. Riehl requested pure bottled water and was not given any pure bottled water for four days. [Filing No. 1 at 16.] Mr. Riehl was then brought before Judge Swaim by video. [Filing No. 1 at 16.] Mr. Riehl was seen by a

doctor and was furnished with pure bottled water.  [Filing No. 1 at 16.]

**C.  Procedural History**

On July 28, 2017, Mr. Stoltzfus and Mr. Riehl filed suit against the following Defendants:

- the State of Indiana, Steven A. Cvengros, Kevin Stalker, Parke Circuit Court, and Honorable Samuel A. Swaim, (collectively, the "State Defendants");

- Cory Hutchins, Ed Roach, Stacy Jeffries, Parke County, County of Parke State of Indiana, the Parke County Board of Commissioners, Jason Frazier, Natalie McCall, Russell White, Benjamin Wood, Justin Cole, Shawn Clover, Geoffrey Canfield, Stacy Feldhake, Bill Cook, Darla Wirth, Cindy Rohr, and Zachary Lancaster, (collectively, the "Parke County Defendants");

- Randall Kneeland, Rodney Smith, and Christopher Fisher (collectively, the "Rockville Defendants");

- David Lee; and

- Does 1-25. [Filing No. 1.]

Presently pending before this Court are four Motions to Dismiss filed by the State Defendants, [Filing No. 19], the Parke County Defendants, [Filing No. 29], the Rockville Defendants, [Filing No. 32], and Mr. Lee, [Filing No. 43].  Each Motion is fully briefed and ripe for the Court's review.

**III.**
**DISCUSSION**

Mr. Stoltzfus and Mr. Riehl are proceeding in this case *pro se* and, while their Complaint is not itself voluminous, the allegations contained therein against twenty-seven named individuals and organizations are wide-ranging and allege violations of seven

Amendments to the U.S. Constitution and more than twelve federal statutes. [Filing No. 1 (alleging violations of U.S. Const. amend. I, IV, V, VI, X, XI, XIV; 42 U.S.C. § 1981; 42 U.S.C. § 1982; 42 U.S.C. § 1983; 42 U.S.C. § 1985; 42 U.S.C. § 1986; 42 U.S.C. § 1988; 18 USC § 241; 18 U.S.C. § 242; 18 U.S.C. § 1621; 18 U.S.C. § 1622; 18 U.S.C. § 1623; 5 U.S.C. § 556(d); 5 U.S.C. § 557; 5 U.S.C. § 706).]

The Court begins its analysis by examining whether Plaintiffs have complied with the basic pleading requirements by sufficiently alleging personal involvement on the part of Defendants. From there, the Court examines Plaintiffs' Claims in light of various time-honored concepts of immunity from suit – sovereign, judicial, and prosecutorial. Next, the Court examines the scope of the statutes at issue in order to determine whether Plaintiffs have stated a claim upon which relief can be granted. Finally, the Court considers Plaintiffs' allegations, organized by the respective "episodes" that Plaintiffs allege occurred.

### A. The Pleading Standard & Personal Involvement

In analyzing the claims brought by Plaintiffs, the Court is guided, first and foremost, by the applicable pleading standard, which the Seventh Circuit has summarized as follows:

> First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). To that end, *Iqbal* states that a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678. Inherent in this standard is the notion that a plaintiff must allege personal involvement on the part of defendants. *See, e.g.*, *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (providing that "individual

liability under § 1983" requires "personal involvement in the alleged constitutional deprivation") (internal quotations omitted). However, in this case, Plaintiffs failed to plead personal involvement on the part of several Defendants.

### 1. *Jail Dispatchers*

First, with respect to the four defendants who are jail dispatchers – Stacy Feldhake, Bill Cook, Darla Wirth, and Cindy Rohr – Plaintiffs merely allege that the individuals "joined the conspiracy against the (Accused) Plaintiffs." [Filing No. 1 at 10.] In response, this group of Defendants contends that all claims against them must be dismissed because Plaintiffs do not offer any facts relating to the dispatchers joining the conspiracy. [Filing No. 30 at 19.] Even construing Plaintiffs' allegations liberally, they have not alleged that these individuals had any direct, personal involvement or supervisory involvement as required to bring constitutional claims. As such, Ms. Feldhake, Mr. Cook, Ms. Wirth, and Ms. Rohr are dismissed as Defendants.

### 2. *Jail Staff*

Similarly, with respect to the four individuals whom Plaintiffs identify as "jail staff" – Natalie McCall, Russell White, Benjamin Wood, and Zachary Lancaster – Plaintiffs merely allege that each individual was a part of a conspiracy to attempt to force Plaintiffs to "sign their names by threats, force, coercion, forgery, and the forces entering into fraudulent contracts with the jail for privileges." [Filing No. 1 at 9-10.] In response, this group of Defendants argues that all claims against them should be dismissed because Plaintiffs do not offer any facts regarding the forced signature. [Filing No. 30 at 18.] Here again, Plaintiffs have failed to allege that these individuals had any direct, personal involvement or supervisory involvement as required to bring constitutional claims. Accordingly, Ms. McCall, Mr. White, Mr. Wood,

and Mr. Lancaster are dismissed as Defendants.

>    3.  *Parke County, County of Parke State of Indiana, and the Parke County Board of Commissioners*

Plaintiffs' claims against Parke County and the "County of Parke State of Indiana," are nearly identical, alleging that the former is the "corporate entity in whose jurisdiction the alleged crime was supposed to have been committed," and the latter is the "entity in whose jurisdiction the alleged crime was supposed to have been committed." [Filing No. 1 at 8].  In addition, Plaintiffs allege that the Parke County Board of Commissioners is the "sub agency that manages Parke County."  [Filing No. 1 at 8.]

Although it is well settled that local governing bodies can be sued directly under § 1983, "the action that is alleged to be unconstitutional" must implement or execute "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Plaintiffs' Complaint is devoid of any allegation of an action on the part of this group of Defendants, let alone any allegation of an action that implements or executes a policy, statement, ordinance, regulation, or decision under *Monell*.  As such, Plaintiffs have failed to plead the requisite level of involvement with regard to Parke County, County of Parke State of Indiana, and the Parke County Board of Commissioners, and they are, therefore,  dismissed as Defendants.

>    4.  *Sheriff Cole and Chief Kneeland*

With regard to Parke County Sheriff Justin Cole and Rockville Police Chief Randall Kneeland, Plaintiffs allege that each "authorized the misconduct and abusive behavior of all the deputies involved" "and or" that "the misconduct/abuse" occurred under his supervision. [Filing No. 1 at 9.]  Here, the deficiencies in pleading are slightly different, as Plaintiffs allege

at least some level of personal involvement, but nonetheless present claims that are insufficient under *Iqbal*.

First, Plaintiffs' contentions regarding Sheriff Cole and Chief Kneeland based on supervisory liability do not state a claim upon which relief can be granted. *See Iqbal*, 556 U.S. at 677 ("In a § 1983 suit or a *Bivens* action—where masters do not answer for the torts of their servants—the term "supervisory liability" is a misnomer"); *Aguilar v. Gaston-Camara*, 861 F.3d 626, 630 (7th Cir. 2017) ("§ 1983 does not establish a system of vicarious liability; a public employee's liability is premised on her own knowledge and actions, and therefore requires evidence that each defendant, through her own actions, violated the Constitution"). Second, as to Plaintiffs' contention that Sheriff Cole and Chief Kneeland authorized the alleged misconduct, Sheriff Cole and Chief Kneeland each argue that all claims against them should be dismissed because Plaintiffs do not allege that, as a supervisor, either knew about the conduct, facilitated it, approved it, condoned it, or turned a blind eye for fear of what he might see, or was personally involved in the arrest. [Filing No. 30 at 19; Filing No. 33 at 6.] On this point, *McCauley v. City of Chicago* is instructive. 671 F.3d 611 (7th Cir. 2011). In *McCauley*, the plaintiff alleged that the city "authorized, tolerated, and institutionalized the practices and ratified the illegal conduct herein detailed." *Id.* at 617. The Seventh Circuit held that such allegations were "the legal elements of the various claims [plaintiff] asserted; they are not factual allegations and as such contribute nothing to the plausibility analysis under *Twombly/Iqbal*." *Id.* at 618. The same applies to Plaintiffs' claim that Sheriff Cole and Chief Kneeland authorized illegal misconduct – such allegations fails to nudge Plaintiffs' claim "across the line from conceivable to plausible." *Id.* at 618 (quoting *Iqbal,* 556 U.S. at 680). As such, Sheriff Cole and Chief Kneeland are dismissed as Defendants.

*5. Deputy Frazier*

In addition, Plaintiffs' only allegation regarding Deputy Jason Frazier of the Parke County Sheriff's Office is that he "joined the serious case of conspiracy and assisted with the forceful and illegal arrest." [Filing No. 1 at 9.] Although Plaintiffs allege a modicum of personal involvement on the part of Deputy Frazier, the lone statement in Plaintiffs' complaint concerning Deputy Frazier fails to comply with notice pleading as it does not even specify which arrest Deputy Frazier was involved in. [Filing No. 30 at 18.] Therefore, Deputy Frazier is dismissed as a Defendant.

Having determined that the first and most fundamental basis for dismissal in this case is Plaintiffs' failure to comply with the pleading standard with regard to fourteen named Defendants, the Parke County Defendants' Motion to Dismiss, [Filing No. 29], is GRANTED as to Ms. Feldhake, Mr. Cook, Ms. Wirth, Ms. Rohr, Ms. McCall, Mr. White, Mr. Wood, Mr. Lancaster, Sheriff Cole, Deputy Frazier, Parke County, County of Parke State of Indiana, and the Parke County Board of Commissioners, and the Rockville Defendants Motion to Dismiss, [Filing No. 32], is GRANTED as to Chief Kneeland. All claims against such Defendants are dismissed.

**B. Immunity**

Of the remaining Defendants, five argue that they are immune from suit pursuant to principles of sovereign immunity, judicial immunity, or prosecutorial immunity. The Court will discuss each type of immunity in turn.

1. *Sovereign Immunity*

    a. <u>State of Indiana</u>

Plaintiffs allege that the "dirty corrupt" state of Indiana is liable because two Parke County prosecutors masqueraded under the authority of the state when the prosecutors alleged that Plaintiffs injured them. [Filing No. 1 at 8.] In response, Indiana contends that the Eleventh Amendment to the U.S. Constitution bars monetary claims against the state, and that the state is not a "person" for purposes of 42 U.S.C. § 1983 and 42 U.S.C. § 1985. [Filing No. 20 at 3-4.] Plaintiffs' allegations against the state of Indiana are a non-starter. Indiana is subject to dismissal in this matter because "a State cannot be sued directly in its own name regardless of the relief sought," absent consent or permissible congressional abrogation pursuant to the Eleventh Amendment to the U.S. Constitution. *Kentucky v. Graham,* 473 U.S. 159, 167 n.14 (1985); *Sebesta v. Davis*, 878 F.3d 226, 231 (7th Cir. 2017) ("states are not among the 'persons' covered by" § 1983). There is no exception to the state of Indiana's Eleventh Amendment immunity discernible in the Complaint. *Ameritech Corp. v. McCann*, 297 F.3d 582, 585 (7th Cir. 2002) (setting forth limited exceptions to a state's sovereign immunity under the Eleventh Amendment). As a result, all claims against the state of Indiana are dismissed.

    b. <u>Parke Circuit Court</u>

Plaintiffs' claims against the Parke Circuit Court[1] include "slander" and "tax fraud" for collecting bail, refusing to accept payment from a bail bondsman, and denying a request

---

[1] Although Plaintiffs refer to the Circuit Court located in Parke County as the "Parke County Circuit Court," under Indiana statute, a circuit court in a respective county "shall be styled '_____ Circuit Court', according to the name of the county in which it may be held." Ind. Code Ann. § 33-28-1-1. As such, the Court will refer to the circuit court located in Parke County as the "Parke Circuit Court."

pursuant to the Freedom of Information Act ("FOIA"). [Filing No. 1 at 7]. The Court need not dwell on the factual allegations Plaintiffs have made against the Parke Circuit Court, because it is a division of the state of Indiana and is, therefore, immune from suit pursuant to the Eleventh Amendment. *See King v. Marion Circuit Court*, 868 F.3d 589, 591 (7th Cir. 2017) (stating that an Indiana circuit court "is a division of the State of Indiana," and therefore suit against it is a suit "against Indiana itself"). Accordingly, all claims against the Parke Circuit Court are dismissed.

### 2. *Judicial Immunity*

#### a. Judge Samuel A. Swaim

Plaintiffs make several claims against Parke Circuit Court Judge Samuel Swaim, alleging that: (1) "[s]ignatures on some of the alleged orders of his are completely different and definitely not signed by said Judge," [Filing No. 1 at 6]; (2) Judge Swaim ordered Mr. Stoltzfus to "come aboard his 'Ship' by crossing the BAR" in his courtroom, [Filing No. 1 at 12-13]; (3) Judge Swaim held Mr. Stoltzfus in contempt without cause and without setting bail, [Filing No. 1 at 13]; (4) Judge Swaim's orders show bias, racism, and prejudice amounting to "hate crimes," [Filing No. 1 at 13]; and (5) that Judge Swaim committed possible "banking violations" that should be investigated by the Federal Bureau of Investigations, the American Civil Liberties Union, the Indiana Attorney General, and the United States Secret Service, [Filing No. 1 at 17].

In response, Judge Swaim argues that the Eleventh Amendment bars monetary claims against officials acting in their official capacities, including state court judges, [Filing No. 20 at 3-4], and, moreover, he is entitled to full immunity from suit because there are no allegations that he "acted beyond the scope of his judicial authority, only that Plaintiffs believe his actions

and rulings were incorrect," [Filing No. 20 at 4-5].

It is well established that absolute judicial immunity is lost only in clear absence of all jurisdiction. *Smith v. Power*, 346 F.3d 740, 743 (7th Cir. 2003) (citing *Stump v. Sparkman*, 435 U.S. 349, 357 (1978)). In Indiana, circuit courts have "original and concurrent jurisdiction in all civil cases and in all criminal cases." Ind. Code Ann. § 33-28-1-2. As such, a circuit court may make "judgments, sentences, decrees, orders, and injunctions," and punish "by fine or imprisonment, or both, all contempts of the court's authority." Ind. Code Ann. § 33-28-1-5. Plaintiffs' allegations regarding Judge Swaim involve actions for which jurisdiction exists under Indiana law, such as issuing orders and holding Mr. Stoltzfus in contempt of Court. Moreover, Judge Swaim's alleged actions fall squarely within his capacity as a judge. *See Stump*, 435 U.S. at 362 ("The relevant cases demonstrate that the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.") As such, Judge Swaim is entitled to immunity for actions taken in the state case, even if Plaintiffs believe he acted improperly. Accordingly, all claims against Judge Swaim are dismissed.

### 3. *Prosecutorial Immunity*

#### a.    Steven Cvengros & Kevin Stalker

Plaintiffs allege that Parke County Prosecutor Steven Cvengros and Deputy Prosecutor Kevin Stalker conspired to wrongfully prosecute Plaintiffs in order to collect revenue. [Filing No. 1 at 8.] In addition, Plaintiffs allege that as attorneys, Cvengros and Stalker are foreign agents because they are members of the bar who are masquerading as "treasonous foreign agents" working for "a British association under the Crown" in contravention of the Thirteenth

Amendment to the U.S. Constitution. [Filing No. 1 at 8.]

At the outset, the Court notes that Plaintiffs' allegations that the practice of law equates to terrorism in violation of the Amendment to the United States Constitution that abolished slavery is utterly frivolous. *See Gladney v. Pendleton Correctional Facility*, 302 F.3d 773, 774 (7th Cir. 2002). That said, the Court need not dwell on Plaintiffs' factual allegations because Cvengros and Stalker are entitled to absolute immunity. *Smith*, 346 F.3d at 743 (stating that "only when a prosecutor acts in the clear absence of all statutory authority is the immunity lost") (citations omitted). According to the allegations in the Complaint, Cvengros and Stalker's actions "were intimately associated with the judicial phase of the criminal process, and thus were functions to which the reasons for absolute immunity apply with full force." *Imbler v. Pachtman*, 424 U.S. 409 (1976); *see also Foreman v. Wadsworth*, 844 F.3d 620, 624 (7th Cir. 2016). As such, all claims against Steven Cvengros and Kevin Stalker are dismissed.

Given that the State of Indiana, the Parke Circuit Court, Judge Swaim, Steven Cvengros and Kevin Stalker are each immune from suit, the State Defendants' Motion to Dismiss is GRANTED, [Filing No. 19], and all claims against the State Defendants are dismissed.

### C.    Claims Brought Pursuant to Inapplicable Statutory Provisions

Prior to considering the claims against the remaining Defendants, the Court will briefly narrow the scope of the statutes at issue. Plaintiffs have invoked a number of statutes that bear no relation to the allegations contained in their Complaint, are inapplicable to any of the Defendants, or that provide no private cause of action.

First, Plaintiffs brought claims pursuant to Title 5 of the United States Code, [Filing No. 30 at 20], which applies to agencies and departments of the Executive Branch of the

Federal Government.  *See* 5 U.S.C. §§ 101-105.  Given that statutory provisions under Title 5 have no bearing on this case, Plaintiffs have failed to state a claim under these provisions.

In addition, Plaintiffs' attempt to bring claims pursuant to the federal criminal statutes found at 18 U.S.C. §241 and 18 USC § 242 are unavailing because such provisions do not provide a private cause of action for civil liability.  *See Caldwell v. Klemz*, 2017 WL 4620693, at *10 (N.D. Ind. Oct. 12, 2017) (collecting cases).[2]

Similarly, Plaintiffs are precluded from bringing a civil action pursuant to federal perjury statutes because they are criminal statutes that do not provide a civil right of action for damages.  *See Lewis v. Hite*, 2014 WL 1921735, at *3 (S.D. Ind. May 14, 2014); *Chibber v. Zoeller*, 2014 WL 644780, at *8 (N.D. Ind. Feb. 19, 2014).

As a result of the foregoing, the Court will dismiss all claims brought pursuant to the following statutes: 5 U.S.C. § 556, 5 U.S.C. § 557, 5 U.S.C. § 706, 18 U.S.C. § 241, 18 USC §242, 18 U.S.C. § 1621, 18 U.S.C. § 1622, and 18 U.S.C. § 1623.

**D.    Plaintiffs' Remaining Claims**

Having dismissed nineteen Defendants, the Court now turns to the allegations against the eight remaining Defendants.  In order to consider such allegations, the Court will examine Plaintiffs' arguments, organized by the various incidents Plaintiffs describe in their Complaint.

*1.    The 3/30 Traffic Stop*

The only remaining Defendant allegedly involved in Mr. Stoltzfus' March 30, 2017 traffic stop is Parke County Deputy Sheriff Cory Hutchins.  Mr. Stoltzfus alleges that Deputy

---

[2] The Parke County Defendants also correctly point out that even if 18 U.S.C. § 241 and 18 U.S.C. § 242 provided Plaintiffs with an avenue to sue for the infliction of emotional distress, Plaintiffs' claims would be barred due to their failure to comply with the Indiana Tort Claims Act.  [Filing No. 30 at 13].

Hutchins stopped him without probable cause due to racism and prejudice, [Filing No. 1 at 6], as a result of Mr. Stoltzfus looking Amish, [Filing No. 1 at 10]. In addition, Mr. Stoltzfus alleges that Deputy Hutchins' arrest of him and subsequent statements to him demonstrated "racial discrimination," "illegal kidnapping," and "practicing law without a license." [Filing No. 1 at 11.] Mr. Stoltzfus alleges that Deputy Hutchins violated his religious beliefs by pulling him over without probable cause, thus impeding his right to travel. [Filing No. 1 at 12.] Finally, Mr. Stoltzfus alleges that Deputy Hutchins committed conspiracy and fraud when he pulled Mr. Stoltzfus over on March 30, 2017. [Filing No. 1 at 17.]

In response, Deputy Hutchins presents the following arguments as to why each of the federal statutes invoked by Mr. Stoltfus fails to provide relief under the facts alleged:

- Mr. Stoltzfus does not allege any discrimination based on race, [Filing No. 30 at 4-5];

- Mr. Stoltzfus failed to specify the parties, the general purpose, and the approximate date of any conspiracy, [Filing No. 30 at 6];

- Mr. Stoltzfus failed to set forth facts to support a conspiracy to deprive him of equal protection, [Filing No. 30 at 8];

- Mr. Stoltzfus has failed to show a violation of his civil rights, [Filing No. 30 at 9];

- Mr. Stoltzfus has made no allegations whatsoever involving the First Amendment, [Filing No. 30 at 9-10];

- Mr. Stoltzfus has not made any claims against federal officers, [Filing No. 30 at 10]; and

- Mr. Stoltzfus cannot show that his arrest constitutes a false arrest, [Filing No. 30 at 13].

A common thread running throughout Mr. Stoltzfus' claims is that Deputy Hutchins racially discriminated against him. Yet nothing in Mr. Stoltzfus' Complaint supports a claim

of racial discrimination.  Instead, Mr. Stoltzfus alleges that Deputy Hutchins stated that Mr. Stoltzfus looked Amish.  However, as the Seventh Circuit recently pointed out, neither 42 U.S.C. § 1981 nor 42 U.S.C. § 1982 refer to "discrimination on the basis of religious identity, beliefs, or observances" and neither section "protect[s] against discrimination based on sex or religion or age." *Lubavitch-Chabad of Illinois, Inc. v. Nw. Univ.*, 772 F.3d 443, 447 (7th Cir. 2014) (citations omitted).  As such, none of Mr. Stoltzfus' claims under §§ 1981 or 1982 survive.

Mr. Stoltzfus also alleges violations of 42 U.S.C. § 1983 stemming from the traffic stop involving Deputy Hutchins; however, the exact nature of this claim is murky.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *L.P. v. Marian Catholic High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).  In Plaintiffs' Complaint, it is unclear what right secured by the Constitution Mr. Stoltzfus alleges was violated during the March 30, 2017 traffic stop, and the Court does not recognize any allegation of a Constitutional violation that states a claim for which relief can be granted.  For example, to the extent that Mr. Stoltzfus alleges that Deputy Hutchens committed a false arrest in violation of the Fourth and Fourteenth Amendments, that claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) because an allegation of false arrest necessarily implies the invalidity of Mr. Stoltzfus' conviction.  *See Tolliver v. City of Chicago*, 820 F.3d 237, 244 (7th Cir. 2016).  Furthermore, because Mr. Stoltzfus' arrest, by his own contention, was a warrantless arrest, it cannot serve as the basis for a malicious prosecution action against Deputy Hutchins.  *Serino v. Hensley*, 735 F.3d 588, 593-94 (7th Cir. 2013).  Similarly, Mr. Stoltzfus' invocation of a nebulous "right

to travel" does not state a claim for which relief can be granted. *See Matthew v. Honish*, 233 F. App'x 563, 564 (7th Cir. 2007) (holding that an argument that state licensure and requirements violate the right to travel "is meritless" because a plaintiff is denied "only a single mode of transportation—in a car driven by himself," which "does not impermissibly burden his right to travel") (internal citations and quotations omitted).

If, on the other hand, Mr. Stoltzfus is alleging a conspiracy in violation of § 1983 involving the March 30, 2017 traffic stop, he has once again failed to state a claim upon which relief can be granted under the applicable pleading standards for a § 1983 conspiracy. *See, e.g.*, *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009) (stating that conspiracy allegations were "held to a higher standard than other allegations; mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her was not enough"); *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006) (providing that a plaintiff must "allege the parties, the general purpose, and the approximate date of the conspiracy"). In this case, Mr. Stoltzfus merely alleges that when Deputy Hutchins gave Mr. Stoltzfus a citation and arrested him, it constituted conspiracy and fraud. Mr. Stoltzfus has therefore, failed to state a claim against Deputy Hutchins under § 1983.

Mr. Stoltzfus appears to have also brought claims against Deputy Hutchins under 42 U.S.C. § 1985. The relevant subsection of § 1985 which would provide relief to Mr. Stoltzfus, if sufficiently alleged, falls under subsection three (3). To state a claim for civil conspiracy under § 1985(3) a plaintiff must allege four elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property of any right or privilege of a citizen of the United States.

*Lewis*, 2014 WL 1921735, at *4 (citing *Grimes v. Smith*, 776 F.2d 1359, 1363 (7th Cir. 1985)). Here again, however, Mr. Stoltzfus does not state a claim because he fails to allege any factual basis for a conspiracy. *Westbrook v. Barclay Court Reporters*, 591 F. App'x 514, 515 (7th Cir. 2015).

The failure of the § 1985 claims also defeats Mr. Stoltzfus' claims under 42 U.S.C. § 1986. *See Katz-Crank v. Haskett*, 843 F.3d 641, 650 (7th Cir. 2016) (citing *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008)).

Finally, having failed to otherwise state a claim against Deputy Hutchins, Mr. Stoltzfus is not entitled to relief pursuant to 42 U.S.C. § 1988 (providing that a prevailing party under §§ 1981, 1982, 1985, and 1986 may be awarded reasonable attorneys' fees).

Because Mr. Stoltzfus has failed to state a claim upon which relief can be granted against Deputy Cory Hutchins, he is dismissed as a Defendant.

### 2. The 6/1 Traffic Stop

Plaintiffs' claims related to the traffic stop that occurred on June 1, 2017 involve four Defendants: Rockville Police Officers Christopher Fisher and Rodney Smith and Parke County Sheriff's Deputies Shawn Clover and Geoffrey Canfield.

As to Officer Fisher, who allegedly initiated the traffic stop, Plaintiffs allege that he initiated an illegal arrest, [Filing No. 1 at 10], and asked Mr. Stoltzfus to get out of the vehicle, [Filing No. 1 at 14]. With respect to the individuals who were allegedly called as backup during the June 1, 2017 traffic stop, Plaintiffs allege that: Deputy Canfield participated in a conspiracy and assisted with an illegal arrest, [Filing No. 1 at 9]; Officer Smith authorized misconduct of all officers involved, [Filing No. 1 at 9], and removed or assisted in removing Mr. Riehl from the vehicle, [Filing No. 1 at 15]; and Deputy Clover participated in a

conspiracy, broke the window of Plaintiffs' vehicle, and assisted with an illegal arrest, [Filing No. 1 at 9].

In response, Deputies Clover and Canfield allege that all claims against them should be dismissed for the same reasons presented by Deputy Hutchins, set forth in Part III.D.1. [Filing No. 30 at 4-20.] Although not identical, Officers Fisher and Smith present similar arguments in support of dismissal. [Filing No. 33 at 2-3.]

In determining whether Plaintiffs have stated a claim with regard to the June 1, 2017 traffic stop, the Court need not belabor the point – some of the claims against this group of Defendants fail for the same reasons as the claims against Deputy Hutchins.[3] Regarding any possible conspiracy under § 1983 or § 1985(3), the Court finds that Plaintiffs have failed to allege any factual basis for such a conspiracy. *See Westbrook*, 591 F. App'x at 515; *Cooney*, 583 F.3d at 971; *Loubser*, 440 F.3d at 443. However, the Court can discern two cognizable claims related to the June 1, 2017 traffic stops: a false arrest claim and an excessive force claim.

a.  June 1, 2017 False Arrest Claim

Of particular note given Plaintiffs' repeated allegations regarding false arrest, as of the date of this Order, Mr. Stoltzfus and Mr. Riehl have not been found guilty of the crimes charged in the criminal cases currently pending in Parke Circuit Court related to the June 1, 2017 traffic stop. Therefore, unlike Mr. Stoltzfus' March 30, 2017 false arrest claim, Plaintiffs' June 1, 2017 false arrest claim is not barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). However, in the pending criminal cases against Mr. Stoltzfus and Mr. Riehl, a probable cause affidavit has

---

[3] One claim that is unique to the June 1, 2017 traffic stop is that Plaintiffs allege that Officer Smith authorized the misconduct of Rockville Officers. [Filing No. 1 at 9.] This claim, however, fails for the reasons set forth in Part III.A.4 regarding allegations against Sheriff Cole and Chief Kneeland – it does not contain any factual allegations and therefore fails to state a claim under the plausibility standard. *See generally McCauley*, 671 F.3d 611.

been filed and approved by court order, and the Court takes judicial notice of Parke Circuit Court's orders.  *See U.S. v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991) ("The district court may also take judicial notice of matters of public record.").

The Seventh Circuit has held that an arrest "is constitutional if the arresting officers (1) have probable cause to arrest the person sought and (2) reasonably believe that the person arrested is the person sought."  *Tibbs v. City of Chicago*, 469 F.3d 661, 664 (7th Cir. 2006) (quoting *United States v. Marshall*, 79 F.3d 68, 69 (7th Cir. 1996)).  Probable cause is an absolute defense to a claim of wrongful arrest under § 1983.  *Rooni v. Biser*, 742 F.3d 737, 740 (7th Cir. 2014) (citing *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008)).  Therefore, the relevant question for the purposes of Plaintiffs' false arrest claims is whether the Parke Circuit Court's findings of probable cause provide a defense to such claims.  In 1982, the Seventh Circuit analyzed this issue under the doctrine of collateral estoppel and expressed "doubt that collateral estoppel would ever be appropriate solely on the basis of a preliminary hearing."  *Whitley v. Seibel*, 676 F.2d 245, 250 (7th Cir. 1982).  Based on *Seibel*, when a § 1983 claim related to probable cause "is more accurately characterized as a challenge to the integrity of the evidence than to its sufficiency," collateral estoppel does not bar the § 1983 claim.  *Schertz v. Waupaca Cty.*, 875 F.2d 578, 581 (7th Cir. 1989); *see also Brokaw v. Weaver*, 305 F.3d 660, 670 (7th Cir. 2002).

In this case, Plaintiffs make no challenge to the sufficiency of the evidence contained in the probable cause affidavit.  Therefore, to the extent that Plaintiffs are alleging false arrest claims related to the June 1, 2017 traffic stop, such claims constitute challenges to the integrity of the evidence that are not barred by collateral estoppel.  As such, holding Plaintiffs' Complaint to the liberal standard required of *pro se* litigants, Plaintiffs have stated a claim for

a false arrest in violation of the Fourth Amendment.

        b.    <u>June 1, 2017 Excessive Force Claim</u>

Regarding excessive force, Plaintiffs allege that Officer Fisher asked Mr. Stoltzfus to get out of the vehicle, [Filing No. 1 at 14], Officer Smith and Deputy Clover removed or assisted in removing Mr. Riehl from the vehicle, [Filing No. 1 at 15]; and Deputy Clover broke the window of Plaintiffs' vehicle and removed Mr. Stoltzfus from the vehicle, [Filing No. 1 at 9; Filing No. 1 at 15].

"Where, as here, [an] excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (quoting U.S. Const. amend. IV. Plaintiffs' claims that they were asked to get out of the vehicle do not rise to the level of excessive force, as the Seventh Circuit has reiterated the Supreme Court's edict that "there cannot be excessive force without some force." *McNair v. Coffey*, 279 F.3d 463, 467 (7th Cir. 2002) (citing *Graham*, 490 U.S. at 394). Similarly, the Seventh Circuit has held that officers are entitled to "forcibly remove" individuals from a car when an individual fails to comply with their command to get out of the vehicle. *See Padula v. Leimbach*, 656 F.3d 595, 603 (7th Cir. 2011).

However, this still leaves Mr. Stoltzfus' claim that Deputy Clover "smashed" the window of Plaintiffs' vehicle with his baton, causing cuts and abrasions to Mr. Stoltzfus' face. The "dispositive question" at a later point will be "whether, in light of the facts and circumstances that confronted the officer . . . the officer behaved in an objectively reasonable manner." *Padula*, 656 F.3d at 602 (citations omitted). However, at the Motion to Dismiss

stage, the Complaint contains sufficient allegations regarding the smashed window to state an excessive force claim under the Fourth Amendment.[4]

Other than Plaintiffs' false arrest claims and excessive force claim against Deputy Clover, Plaintiffs have failed to state a claim upon which relief can be granted related to the June 1, 2017 traffic stop. Therefore, all other all other claims alleged in their Complaint regarding the June 1, 2017 traffic stop are dismissed.

### 3. Occurrences at the Park County Jail

Plaintiffs allege that "jail commander" Ed Roach authorized abuse in jail, [Filing No. 1 at 9], refused to provide Mr. Stoltzfus with a bible after his March 30, 2017 arrest, [Filing No. 1 at 12], and refused to furnish Mr. Riehl with "pure bottled water" for four days following his June 1, 2017 arrest, [Filing No. 1 at 16.]

In response, Mr. Roach contends that all claims against him should be dismissed because the alleged denial of bottled water to Mr. Riehl occurred while he was a pre-trial detainee and, in any case, does not constitute cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution. [Filing No. 30 at 10.]

Mr. Stoltzfus' claim that he was temporarily denied access to a bible must be analyzed under the First Amendment's Free Exercise Clause. The Seventh Circuit has held that a prisoner's right to "freely to exercise his religion does not evaporate entirely when he enters a jail." *Tarpley v. Allen Cty., Indiana*, 312 F.3d 895, 898 (7th Cir. 2002). As such, "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by

---

[4] Notably, Plaintiffs' Complaint states that Deputy Clover "smashed the window with his baton in Stoltzfus [*sic*] face, causing glass cuts and abrasions to Plantiff [*sic*] Stoltzfus [*sic*] face." [Filing No. 1 at 15.] Given that the assertions in the Complaint regarding the smashed window do not allege any involvement on the part of Mr. Riehl, the Complaint only states an excessive force claim upon which relief may be granted as it relates to Mr. Stoltzfus.

the First and Fourteenth Amendments without fear of penalty." *Id.* at 898 (quoting *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972)). However, Plaintiffs' Complaint fails to allege that Mr. Roach violated Mr. Stoltzfus' First Amendment rights by denying him a bible; to the contrary, the Complaint alleges that when Mr. Stoltzfus' request for a bible was brought to Mr. Roach's attention, Mr. Roach provided Mr. Stoltzfus with a bible.

Turning then to the Eighth Amendment, Plaintiffs allege that Mr. Roach violated Mr. Riehl's rights when he denied Mr. Riehl's request for "pure bottled water" over a period of four days following Mr. Riehl's arrest on June 1, 2017. The Eighth Amendment, however, "does not apply to every deprivation, or even every unnecessary deprivation, suffered by a prisoner, but only [to] that narrow class of deprivations involving 'serious' injury inflicted by prison officials acting with a culpable state of mind." *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996) (quoting *Hudson v. McMillian*, 503 U.S. 1, 19 (1992)). Courts in this circuit have had numerous occasions to consider complaints regarding access to water and have failed to find an Eighth Amendment violation under conditions considerably more serious than that alleged in Plaintiffs' Complaint. *See, e.g.*, *Williams v. Collins*, 2015 WL 4572311, at *3 (N.D. Ill. July 29, 2015) (finding no Eighth Amendment violation where an inmate lacked running water in his cell but had access to drinking water in other prison areas); *Carroll v. DeTella*, 2000 WL 20711, at *4 (N.D. Ill. Jan. 10, 2000), *aff'd*, 255 F.3d 470 (7th Cir. 2001) (finding no Eighth Amendment violation where plaintiff requested bottled water due to concerns about the safety of the prison's water supply). As such, the allegations contained in Plaintiffs' complaint regarding the denial of "pure bottled water" fail to state a claim under the Eighth Amendment. Accordingly, Mr. Roach is dismissed as a Defendant.

### 4. Occurrences at the Parke Circuit Court

Plaintiffs allege that Parke Circuit Court clerk Stacy Jeffries conspired to violate Plaintiffs' rights by refusing to comply with a Freedom of Information Act ("FOIA") request and by declining to enter default against the state upon Plaintiffs' request. [Filing No. 1 at 7].

In response, Ms. Jeffries contends that the FOIA request was initiated by a third party who is not involved in this suit and that Plaintiffs have no standing to argue this claim on behalf of a third party. [Filing No. 30 at 17.]

Plaintiffs have failed to plead basic facts regarding the allegations against Ms. Jeffries, including the timeline of their allegations or details about Ms. Jeffries' personal involvement in the alleged occurrences. However, the Court need not conduct an exhaustive analysis of the underlying allegations against Ms. Jeffries. The basic allegation against her is conspiracy and, here again, Plaintiffs have failed to allege any factual basis for a conspiracy under § 1983 or § 1985(3). *See Westbrook*, 591 F. App'x at 515; *Cooney*, 583 F.3d at 971; *Loubser*, 440 F.3d at 443. Accordingly, Ms. Jeffries is dismissed as a Defendant.

### 5. Tow Truck Owner

Plaintiffs have also brought claims against David Lee, alleging that he is the owner of a tow truck company who "joined in the conspiracy with the other conspirators." [Filing No. 1 at 10.]

In support of his Motion to Dismiss, Mr. Lee incorporates many of the arguments made by the Parke County Defendants and also points out that Plaintiffs failed to allege any facts about him. [Filing No. 44 at 2.]

Although the Court is inclined to agree that Plaintiffs' Complaint does not contain adequate allegations of personal involvement on the part of Mr. Lee, Plaintiffs' allegations

against Mr. Lee also fail to state a claim under the applicable standards for holding a private actor liable for a Constitutional violation. It is well settled that a "private person acts under color of state law" when he is a "willful participant in joint action with the State or its agents." *L.P.*, 852 F.3d at 696 (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)). However, a plaintiff must identify evidence of a "*concerted effort*" between a state actor and an individual in order to support a finding that the deprivation committed by the private actor is attributable to the state. *Id.* at 696 (quotations omitted; emphasis in original). Here, Plaintiffs have failed to allege facts that plausibly show that Mr. Lee was a willful participant with state actors who engaged in a concerted effort to deprive Plaintiffs of their Constitutional rights. As such, Mr. Lee's Motion to Dismiss, [Filing No. 43], is GRANTED, and all claims against Mr. Lee are dismissed.

### 6. *DOES 1-25*

As a final matter, the Court notes that although Plaintiffs have included "DOES 1-25" in their case caption, their Complaint contains no allegations regarding such Defendants. "A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption." *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). As such, all claims against the Defendants known as "DOES 1-25" are dismissed.

## IV.
### CONCLUSION

For the reasons described herein, the only remaining claims are: (1) false arrest claims related to the June 1, 2017 traffic stop by Mr. Stoltzfus and Mr. Riehl against Parke County Sheriff Deputies Shawn Clover and Geoffrey Canfield; and (2) Mr. Stoltzfus' excessive force claim against Deputy Clover.

As such, the Court **GRANTS** the State Defendants' Motion to Dismiss, [19] and Mr. Lee's Motion to Dismiss, [43]. The Parke County Defendants' Motion to Dismiss, [29] and the

Rockville Defendants' Motion to Dismiss, [32], are **GRANTED** in part and **DENIED** in part, as follows:

- the Parke County Defendants' Motion to Dismiss is **DENIED** with respect to Plaintiffs' false arrest claims against Parke County Sheriff Deputies Shawn Clover and Geoffrey Canfield and Mr. Stoltzfus' excessive force claim against Deputy Clover,

- the Parke County Defendants' Motion to Dismiss is **GRANTED** in all other respects,

- the Rockville Defendants' Motion to Dismiss is **DENIED** with respect to Plaintiffs' false arrest claims against Rockville Police Officers Christopher Fisher and Rodney Smith,

- the Rockville Defendants' Motion to Dismiss is **GRANTED** in all other respects.

Dismissal of all claims against the State Defendants is **WITH PREJUDICE**. Dismissal of all other claims set forth herein is **WITHOUT PREJUDICE**. Plaintiffs have **thirty days** to move to amend their complaint if they intend to continue to pursue the claims that have been dismissed without prejudice. Failure to file a motion to file an amended complaint within this time period will result in dismissal **WITH PREJUDICE** with respect to such claims.

The Court further notes that pursuant to Local Rule 15-1(a)(1), any motion to amend the complaint must include as an attachment the proposed amended pleading. In filing a proposed amended complaint, Plaintiffs should take care to conform to the following guidelines: (a) the amended complaint shall comply with the requirement of Rule 8(a)(2) of the *Federal Rules of Civil Procedure* that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . . ," which is sufficient to provide the defendant with "fair notice" of the claim and its basis. *Erickson*, 551 U.S. at 93 (per curiam) (citing *Twombly*, 550 U.S. at 555 and quoting Fed. R. Civ. P. 8(a)(2)); (b) the amended complaint must include a demand for the relief sought; (c) the amended complaint must identify what legal injury they claim to have suffered and

what persons are responsible for each such legal injury; and (d) the amended complaint must include the case number referenced in the caption of this Entry.

Plaintiffs are further advised that any allegations in a proposed amended complaint should be consistent with the law as it exists in statute and in the case law of this circuit law as set forth in the Court's ruling announced herein. Notwithstanding Plaintiffs' subjective interpretation of the law, allegations that are identical to the claims dismissed in this Order will be subject to cursory review and dismissal on the same grounds. Similarly, the Court will dismiss a claim as frivolous if it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Gladney v. Pendelton Corr. Facility*, 302 F.3d 773, 774 (7th Cir. 2002). Likewise, any amended complaint that is confusing and demonstrates an inability to file a lucid complaint, will be subject to dismissal on those grounds. *Loubser*, 440 F.3d at 443.

Given the potential for an amended complaint, the period of time within which Parke County Sheriff Deputies Shawn Clover and Geoffrey Canfield and Rockville Police Officers Christopher Fisher and Rodney Smith must answer is extended for a period of sixty days following this entry.

No final judgment shall issue at this time.

Date: 1/30/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

<u>Distribution via U.S. Mail</u>:
John Stoltzfus, PO Box 199, Montezuma, IN 47862
John Riehl, PO Box 199, Montezuma, IN 47862

<u>Distribution via ECF only to all Counsel of Record</u>